# In the United States Court of Federal Claims

No. 23-1000
Filed: October 4, 2023
Re-issued: December 19, 2023[1]

|  |  |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS COMPANY, | ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) |

## **ORDER**

    Advanced Technology Systems Company ("ATSC") brings this pre-award bid protest arising out of Navy Solicitation No. N0002423R5310 (the "RFP"). The RFP seeks a Nationwide Maritime Surveillance System ("NMSS") to be furnished to the Egyptian Navy via the Department of Defense Foreign Military Sales ("FMS") program. Before the Court is Plaintiff's motion to complete the administrative record ("AR") with four categories of documents.

---

[1] The Court initially filed this order under seal. In a status report, the parties have jointly proposed certain redactions they agree are appropriate under the protective order and vigorously dispute additional redactions the government seeks at least for now. The parties' dispute centers on what is required to protect information under 10 U.S.C. § 130c, which allows the appropriate "national security official" (here the Secretary of Defense) to withhold from public disclosure certain information of foreign governments. According to the plaintiff, the government does not appear to have followed the processes to invoke the privilege. The government contends that it is still deliberating internally on whether to invoke the privilege and if it does, the Court will then be able to assess the sufficiency of the invocation. In the meantime, the government does not object to releasing a version of this opinion that does not include this information of a foreign government. Because the Court agrees that it should not resolve the § 130c issues without full briefing after a formal invocation, the Court redacts all the information (for now) that the government seeks to protect from public disclosure. That said, the Court is sensitive to the plaintiff's concern that the government is not putting any duration on its deliberations or when it must get the Egyptian government's input. While the Court is not going to set a specific deadline, the government should not interpret that to mean that it may deliberate indefinitely. Given that § 130c's application is likely to be an issue for all (or nearly all) future filings and orders, the Court expects the government to move quickly.

Because it appears the Navy considered, directly or indirectly, some of these documents, the Court grants-in-part and denies-in-part ATSC's motion.

I.  **Background**

In April 2018, the Egyptian Navy Armament Department issued a Request for Proposals ("Egyptian RFP") for a "coastal surveillance system."  ECF No. 23-2 at AR2421.  This RFP was minimal, requiring a "detailed technical and price proposal for a coastal surveillance system covering both the Mediterranean and Red Sea coasts of Egypt."  *Id*.  The Egyptian RFP then required respondents to: propose locations of radars to cover the entire coastal area; structure the project in two phases (one for the Mediterranean coast and one for the Red Sea coast); and provide for follow-on support.  *Id*.  That was it.

ATSC designed a proposed NMSS system in response to the Egyptian RFP and submitted a proposal to the Egyptian Government in November 2018, followed by a revised proposal in July 2019.  ECF No. 23-2 at AR2422–2507 (revised proposal).  The Egyptian Navy then issued a Letter of Request ("LOR") to the United States in August 2019 seeking a sole-source FMS award to ATSC for its NMSS solution.  ECF No. 23-3 at AR3871.  In February 2020, the United States Navy sent representatives from its Integration Program Office ("PMW 740") to ATSC's Arizona facilities to be briefed for five days about the NMSS and to hold discussions "focus[ing] around [Letter of Acceptance ("LOA")] case requirements."  ECF No. 23-3 at AR2988.  Later that month, [Section 130c] such that the Navy had "no objection to accepting the LOR with sole source direction."  ECF No. 23-2 at AR2849.

In May 2021, the U.S. Navy issued an LOA for ATSC's NMSS solution stating that Egypt "has requested . . . that ATSC be designated as prime contractor" and that the LOA "is confirmation that a specific source designation has been requested in writing by the purchaser and that the Department of Defense has accepted the request."  ECF No. 23-3 at AR2995–3002.  The Government of Egypt and the United States Government subsequently executed that Letter of Acceptance approving the sole-source award.

In November and December 2021, the Navy conducted a 30-day site survey in Egypt for the NMSS with the Egyptian Government; ATSC was not allowed to participate, apparently due to COVID restrictions on travel that could not be squared with ATSC's cost and participant estimates "within planning timeline."  ECF No. 23-3 at AR3560.  That December, the Navy briefed Egypt, clearly advocating against a sole-source award to ATSC.  ECF No. 23-2 at AR2837–41 ("***Reconsider NOT going sole source***"; "**Sole Source DOES NOT provide a total package approach**"; "Amend the LOA") (emphasis in original).  The AR is not entirely clear on what led the Navy to change its view of the ATSC proposal.

Between November 2021 and January 2022, the decision was made to pursue full-and-open competition rather than a sole source award to ATSC.  ECF No. 15 ¶¶ 71–72.  That decision is at the center of this dispute.  ATSC points to the Navy's briefing with Egypt in December 2021 for its claim that PMW 740 "had advocated for ATSC's removal as the

designated awardee . . . and for the solution to be procured via a full-and-open competition." ECF No. 15 ¶ 72. The Government contends that the decision was entirely Egypt's. *See, e.g.* ECF No. 23-2 at AR2837–41. But it was decided. On January 25, 2022, the Egyptian Government issued a revised LOR to "[r]emove ATSC as a sole source in the subject FMS case" in favor of full-and-open competition. ECF No. 23-2 at AR2846.

Three months later, in March 2022, the Navy responded to Senator Tim Kaine's office that it [REDACTED – Section 130c] ECF No. 23-3 at AR3561. In November 2022, the Secretary of the Navy told Senators Shaheen, Hassan, Kaine, and Warner that "the U.S. Navy did not recommend a deviation from the source requested by the FMS customer," but instead, that the Egyptian Navy requested an LOR Amendment in January 2022. ECF No. 23-2 at AR3591. The U.S. Navy then issued the RFP (the "Navy RFP") on February 2, 2023.

In its First Amended Complaint, ATSC alleges that the Navy has [REDACTED – Protective Order] ECF No. 15-1 ¶ 5. Thus, ATSC argues that the Navy has violated (1) the requirements of fundamental fairness in procurements under the Federal Acquisition Regulation ("FAR"); (2) the Procurement Integrity Act ("PIA"); (3) the Trade Secrets Act and FAR 3.104-4(d)(3); and (4) the takings clause of the Fifth Amendment of the U.S. Constitution (in the event a contract is awarded based on ATSC's claimed intellectual property).

The Navy provided an administrative record on July 24, 2023. One week later, ATSC moved to complete the administrative record, seeking to compel the Government to provide four categories of documents:

> (1) the Egyptian Navy's original RFP . . . and ATSC's proposal materials for its proprietary NMSS solution submitted in response;
>
> (2) all communications between the Government of Egypt and the United States related to ATSC's NMSS solution and/or the subject procurement following Egypt's August 17, 2019 LOR for a sole-source award to ATSC for its NMSS solution;
>
> (3) all materials ATSC provided to the Navy about ATSC's NMSS solution following Egypt's issuance of the LOR [on August 17, 2019]; and
>
> (4) unredacted versions of the documents over which Defendant has claimed the deliberative process privilege.

ECF No. 24 at 7. In its response, the Government "agree[s] to completion in two limited respects"—namely, that the record should be corrected to include both the omitted materials that ATSC transmitted to the Navy while the Navy was considering ATSC's assertions of PIA

violations, as well as three of the seven redacted emails challenged by ATSC. ECF No. 29 at 1. In all other respects, the Government opposes Plaintiff's motion. *Id.*

## II.     Legal Standard

In a bid protest, the agency provides the Court an administrative record. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). To be complete, the administrative record must include "all materials that were 'directly or indirectly considered by the agency decisionmakers,' such that the reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Trace Sys. Inc. v. United States*, 160 Fed. Cl. 691, 694 (citations omitted). The Court's rules contain a list of core documents that should be included, RCFC App. C, ¶ 22, as well as a catch-all for any additional relevant documents, RCFC App. C, ¶ 24. The Court's task is to review the administrative record using the appropriate Administrative Procedure Act ("APA") standard of review. 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").

At times, plaintiffs call into question the completeness of the administrative record provided by the agency, often resulting in a motion that the Court order the agency to complete the record by including omitted documents that the agency did consider in making its decision. *See, e.g. Trace Sys.*, 160 Fed. Cl. 691. "A motion to 'complete' the record seeks to add documents relevant to the challenged agency decision that were considered by the relevant agency decisionmakers but were not included in the record." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) (citing *Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155 at 158 (2010)). A motion to supplement the administrative record, on the other hand, calls for the Court to order the agency to include documents that were not considered in making its decision, but should have been. "A motion to 'supplement' the record seeks to add materials that the agency did not consider but should be considered to permit a proper evaluation of the agency's decision." *Poplar Point*, 145 Fed. Cl. at 494 (citing *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011)). Here, ATSC seeks to complete the record with four categories of documents, arguing in the alternative that the record should be supplemented with them. *See* ECF No. 24.

## III.    Discussion

### A.      The Egyptian Navy's RFP and ATSC's proposals.

ATSC seeks the Egyptian RFP and ATSC's initial proposal to the Egyptian RFP, arguing that these documents were at least indirectly considered by the Navy in that they animated Egypt's August 2019 LOR (already found in the AR). ECF No. 23-3 at AR3871.[2] According to

---

[2] ATSC attached both Egypt's RFP and ATSC's initial proposal to its amended complaint. ECF No. 15-3, Exs. 2–3. Though not specified by Plaintiff, the Court interprets "proposal materials" to include Exhibit 5 to Plaintiff's amended complaint (a set of ATSC's answers in October 2018

4

ATSC, the record reflects that the requirements contained within Egypt's LOR and subsequent LOA derive from ATSC's proposal materials and were alluded to as support for the Navy's conclusion regarding the alleged PIA violation ("A detailed System Requirements Review was performed by the PMW 740 Egypt team, which decomposed the requirements from [Egypt's August 2019 LOR] and subsequent LOA and amendment."  ECF No. 23-3 at AR4068.  "The functional requirements and system components can be traced back to the operational requirements outlined in the Egypt LOA."  ECF No. 23-3 at AR3955.).  In short, ATSC contends the record should include the Egyptian RFP and ATSC's proposal materials.

Of the documents ATSC wishes to add to the AR, two are already in it.  The Egyptian RFP is already included in the AR.  See ECF No. 23-2 at AR2421.  Similarly, ATSC's final proposal is already in the AR.  See ECF No. 23-2 at AR2422–2507 (ATSC's final proposal, dated Nov. 5, 2018, and amended July 5, 2019).  As to the remaining two documents—ATSC's initial proposal (ECF No. 15-3 at 4–83) and ATSC's answers to Egypt's questions post-demonstration (the "Q&A responses") (ECF No. 15-4 at 88–142)—the Government contends that ATSC cannot now seek add documents to the AR that ATSC failed to submit as part of its procurement integrity act ("PIA") complaint.  But ATSC's motion to complete the administrative record does not depend on which documents it provides to the Government when alleging a violation of the PIA.  Rather, the administrative record is assembled by the Government and includes all non-privileged materials directly or indirectly considered by the agency decisionmaker at the time of the decision.  *See Trace Sys. Inc. v. United States*, 160 Fed. Cl. 691, 694 (2022) (citations omitted).

That said, ATSC has not met its burden of showing that its initial proposal or responses to Egypt's questions belong in the record because there is nothing to support that these documents were ever in the Navy's possession prior to this litigation.  Both documents are part of exchanges between ATSC and a foreign government bearing no apparent relation to the FMS process, nor to the Government's involvement.  Documents never possessed by the Government are not documents it "considered, directly or indirectly."  *Trace Sys. Inc. v. United States*, 160 Fed. Cl. 691, 694 (2022) (citations omitted).

ATSC insists that                                                 ECF No. 30 at 10 (emphasis in original).  It may well be that, as ATSC contends,

*Id.*  But ATSC has provided no specific reason that its *initial* proposal to Egypt must also be included.  There is nothing in the record thus far that reflects the Navy had ATSC's initial proposal prior to this litigation.  The same is true of ATSC's Q&A responses, communications between Egypt and ATSC. In the end, ATSC has not met its burden of showing that the Government considered Plaintiff's initial proposal or Q&A responses either directly or indirectly.

---

to questions posed by the Egyptian Navy during the "System Demonstration," with accompanying diagrams and schematics.).  ECF No. 15-4 at 88–142.

Nor does it appear necessary to supplement the record with these materials. ATSC has not identified material information in its initial proposal that was not in its final proposal, which is already in the record. Indeed, the Amended Complaint only references the initial proposal to show that ATSC called its solution the "Nation-wide Maritime Surveillance System," ECF No. 15 ¶ 24, and to show that ATSC marked its initial proposal as proprietary, *id.* ¶ 25. Based on the record already before the Court, it does not appear that "the omission of [this] extra-record evidence precludes effective judicial review." *Axiom Resource Mgmt, Inc. v. United States*, 564 F.3d 1374, 1380 (2009).

### B.   Egypt's communications with the Government about changing the procurement from sole source to full and open competition.

ATSC next moves to complete or supplement the record with communications between the Government and Egypt discussing the procurement. The AR contains documents referring to or suggesting the existence of additional communications between Egypt and the Navy about the procurement that are not included in the AR. ATSC moves to complete the AR with any documents related to the Egyptian Government's discussions about changing from sole source to full-and-open competition, the "evolution" of the Egyptian Navy's requirements, and how that evolution was conveyed to the Navy.

The Government first argues that "[d]iscussions regarding Egypt's choice to remove the sole source request and seek full-and-open competition, and the 'evolution' of Egypt's needs, are not relevant to the protest." ECF No. 29 at 23. The Court disagrees. Communications between Egypt and the Navy about the decision to move from sole source award to a full-and-open competition are directly relevant to ATSC's protest allegations in this case. ATSC claims that the Navy violated FAR §§ 1.102, 1.602, and 3.101 by failing to treat ATSC fairly in the procurement. [Section 130c redacted] ATSC does allege the facts sufficient to plead such a claim. ECF No. 15 ¶¶ 62–84. And during argument ATSC stated its intention to amend its Complaint to include such a count. Given that the voluntary stay is set soon, it would be inefficient and wasteful of the limited time the Court and parties must resolve this protest to require ATSC to amend the Complaint and then fight over whether documents are responsive to the amended complaint. And it appears clear that during the development of the RFP, the Navy was engaged in discussions with Egypt in which the Navy [Section 130c redacted]

- [Section 130c redacted]

- [Section 130c redacted]

6

[Section 130c redacted]

- Section 130c ████████████
- Section 130c ████
- Section 130c ████████
- Section 130c ██████
- Section 130c ████████
- Section 130c ██████

The Government next argues that even if such materials were relevant, ATSC has not shown that they were considered by agency decisionmakers. Given the documents already in the AR, this argument necessarily fails. The very group that ATSC alleges was meeting with Section 130c  The Navy cannot now bury its head in the sand and claim ignorance of these communications.

ATSC also seeks all documentation reflecting communications between Egypt and the Navy "about the subject procurement generally." ECF No. 30 at 12–13. This is overbroad. It cannot be plausibly shown that *all* discussions between the two governments "about the subject procurement generally" belong in the AR. But the Court agrees with ATSC that the Government must complete the AR with communications between the Navy and Egypt about whether to compete this procurement as sole source or through full-and-open competition, and communications about Egypt's NMSS requirements.

### C. Documents ATSC provided to the Navy during discussions.

Between the issuance of Egypt's LOR in August 2019 and the issuance of the Navy's RFP in February 2023, ATSC provided documentation about its NMSS solution to the Navy. ATSC moves to complete the AR with all such materials from this timeframe, as well as all



documents reflecting the Navy's consideration of these materials.  Among the materials ATSC seeks to add to the AR are correspondence and technical information that ATSC emailed to the Navy in 2019-2020 (and marked as proprietary), and ATSC's draft statement of work for the NMSS.[3]  According to ATSC, the Government included in the AR only a "context-less summary of ATSC's solution versus the Navy RFP."  ECF No. 24 at 12.  Based on the AR thus far, it appears clear that the Navy sought those materials "to become intimately familiar with the system and all of its components."  ECF No. 15-5 at 139.

The Government stipulates to the inclusion in the AR of certain emails ATSC sent to the Navy on May 16-17, 2023, in response to agency requests during the PIA inquiry.  ECF No. 29 at 26 n.26.  Indeed, the Navy acknowledges that similar documents are already in the AR.  Tab 85, ECF No. 23-3 at AR3598–3855.  As for the draft statement of work ATSC wants to include in the AR, at least two versions of it are already in the AR so there does not appear to be anything more to add.  ECF No. 23-3 at AR3600–34, AR3700–33.

The Government, however, opposes the inclusion of an email thread between ATSC and the Navy that ends with a message dated April 7, 2020.  ATSC attached this email thread as an exhibit to its amended complaint, ECF No. 15-5 at 104–40 (Exhibit 12), as an exemplar of "the correspondence and proprietary technical information that ATSC provided to the Navy via email throughout 2019 and 2020," claiming it is "especially relevant because the AR reveals that the Navy employee who drafted the Navy's acquisition planning documents . . . was the same person who worked hand-in-hand with ATSC throughout 2021, receiving information about ATSC's proprietary solution that later appeared in the Navy's RFP."  ECF No. 24 at 11–12.  The Government responds that this named employee does not appear in Exhibit 12, and that the email thread ends in April 2020, before ATSC's identified timeframe, and thus would not support a suggestion that relevant materials are missing from the record.  Considering the string of citations to the AR made by ATSC for this point, the Court interprets ATSC's reference to this particular email thread as an exemplar of a kind of communications, not a request for a singular document.  As material provided by ATSC to the Navy about the NMSS, the email thread and others like it should be included.

After Egypt's LOR in August 2019, the Government requested, received, and considered relevant materials about the NMSS from Plaintiff.  Notes from the Navy's visit to ATSC's site in February 2020 are included in the AR, ECF No. 23-3 at AR2987–91, but not the documents reviewed by the Navy or how they informed the subject solicitation requirements.  The AR includes references to weekly teleconferences between the Navy and ATSC, but no records thereof.  ECF No. 23-3 at AR2991.  The Navy solicited and received feedback from ATSC on a draft Performance Work Statement, ECF No. 23-3 at AR3817, but the AR contains no documentation about how that feedback was used.  The PMW 740 Egypt team conducted a Systems Requirements review in which it decomposed the Egyptian LOR requirements, ECF No. 23-3 at AR4715, but no documents detailing or describing that decomposition are found in the

---

[3] These documents are appended attached as exhibits to Plaintiff's amended complaint.  ECF No. 15-5 at 104–39, 208.  ATSC does not limit its motion to those exhibits.  ECF No. 30 at 15.

AR.[4]  The Government then put together the subject solicitation, fashioned its requirements (alleged by ATSC to overlap with its proprietary system), and issued it in February 2023.

The AR should be completed with all documents and materials provided to the Navy at its request by ATSC about the NMSS.

### D.   Deliberative materials.

Lastly, ATSC seeks the inclusion in the record of redacted portions of emails within the AR, and any other materials redacted or excluded on the basis of privilege.[5]  As to three of the seven redacted emails, the Government does not oppose the motion and agreed to include unredacted versions in the AR.  ECF No. 29 at 27.  Therefore, the Court does not address those emails in this opinion.

As to the other emails and additional documents that it may have withheld, the Government opposes because they are "predecisional and deliberative" and do not belong in the AR at all.  ECF No. 29 at 28.  The Government maintains that it need not, and does not, assert deliberative process privilege, or any other privilege for that matter, as such an invocation is "unnecessary, because as a predicate matter the redacted information is deliberative and predecisional, and therefore is not part of the administrative record."  ECF No. 29 at 29 (citing *Blue Ocean Inst. v. Gutierrez*, 503 F.Supp. 2d 366 (D.D.C. 2007)).  This argument is difficult to accept for documents that the Government put into the record and redacted.  The Government asserts that these documents are redacted as deliberative, ECF No. 23 at AR6–7, 9, which appears to be an attempt to invoke the deliberative process privilege.

In bid protest cases, this Court has long held that if the Government believes certain documents are legally privileged, "the proper course [is] to assert a legally protected privilege over those materials and to submit a privilege log to potentially allow the Court to assess the propriety of the asserted privilege based on an *in camera* review."  *Trace Sys. Inc. v. United States*, 160 Fed. Cl. 691, 696–97 (2022) (collecting cases); *see also Poplar Point RBBR, LLC v.*

---

[4] Written products required to be part of such a Systems Requirements Review under the internal procedures of the Department of Defense and the Navy—a Cost Estimate, Risk Assessment, System Performance Specification, Technical Plan (DOD); and meeting minutes, attendee lists, Requests for Action and/or Information, a Technical Review Summary Report (Navy)—are not found in the AR.  *See* Dep't of Defense, *Sys. Eng'g Guidebook* (Feb. 2022), § 4.2.1 at 65 (https://ac.cto.mil/wp-content/uploads/2022/02/Systems-Eng-Guidebook_Feb2022-Cleared-slp.pdf (last visited October 2, 2023)); Dep't of the Navy, *Naval Sys. Eng'g Tech. Rev. Handbook*, § 6-4 (http://www.acqnotes.com/Attachments/Systems%20Engineering%20Technical%20Review%20Process%20Handbook%20v1.doc (last visited October 2, 2023)).  While these internal handbooks do not carry legal weight, they are indicative of what documentation, withheld from the AR and reflecting the Navy's collection and analysis of Egypt's requirements, likely exists.

[5] The redacted emails in question are those located at Tab 83, *i.e.* ECF No. 23-2 at AR2777; ECF No. 23-3 at AR2958, AR 2960, AR3592–94.

*United States*, 145 Fed. Cl. 489 (2019) (denying Poplar Point's motion to complete the record after conducting an *in camera* review of privileged documents excluded from the record and then ordering the government to list those documents in a privilege log filed under seal); *IXI Tech. Elec. Warfare, LLC v. United States*, No. 21-1490, 2021 WL 6054927, at *4 (Fed. Cl. Dec. 3, 2021) (requiring a privilege log and *in camera* review of withheld documents); *EFW, Inc. v. United States*, 147 Fed. Cl. 186, 189 (2020) (rejecting the government's argument that privileged documents are not part of the record and a privilege log is inappropriate because "the deliberative process privilege is not absolute and is subject to judicial oversight") (citations omitted); *Sonoran Tech. & Pro. Servs., LLC v. United States*, 132 Fed. Cl. 644, 649 (2017) (ordering the government to supplement the record with documents referenced in communications already in the record or list them on a privilege log and provide them for *in camera* review); *ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127, at *6 n.15 (Fed. Cl. Apr. 28, 2014) (rejecting the argument that privileged documents are not within the record or properly identified in a privilege log); *Oak Grove Techs., LLC v. United States*, 156 Fed. Cl. 594, 606 n.18 (2021) ("If a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege.") (quoting *Inst. For Fisheries Res. v. Burwell*, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017); *Estes v. United States*, 128 Fed. Cl. 285, 291 (2016) (concluding upon *in camera* review of the government's privilege logs that the government's descriptions were sufficient to enable the Court to determine the threshold privilege question); *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (2006) ("The customary and appropriate method of proceeding is an *in camera* review by the Court of the documents on the Government's privilege log.").

As Judge Wheeler explained in *EFW*, none of the potentially applicable privileges—*e.g.*, deliberative process privilege—are absolute, and without a privilege log ATSC may never know that documents considered by the agency are missing from the record. This is also the clear rationale of *Poplar Point*, which recognized that privileged documents were properly not in the record but ordered a privilege log and *in camera* review to confirm that withheld documents were actually privileged. *Poplar Point*, 145 Fed. Cl. at 491 ("Pursuant to this court's [Order], the government provided for *in camera* review documents related to the amenities amendment that were excluded from the administrative record. Pursuant to this court's [Order], the government also filed under seal a privilege log for these documents."), 494–95 ("The internal communications and draft documents that Poplar Point seeks for inclusion in the administrative record are inter-agency deliberative documents and include attorney client privileged communications that were properly excluded from the administrative record.").

ATSC contends that the failure to properly invoke the privilege amounts to its waiver by the Government. Here, the Court disagrees. There are procedural and substantive requirements for invoking the deliberative process privilege. *See United Affiliates Corp. v. United States*, 154 Fed. Cl. 335 (2021) (delineating both sets of requirements in detail). The Government falls short of these requirements when it merely states "redacted as deliberative" in its index to the AR. ECF No. 23 at AR6–7, 9. But here, "the procedural shortcomings . . . are not sufficient to invalidate the Government's claim of privilege," *Dairyland Power Co-op. v. United States*, 77

Fed. Cl. 330, 340 (2007), nor do they amount to a wholesale waiver of the privilege by the Government. But a compliant invocation of the privilege is an appropriate remedy.

On its privilege log, the Government shall include all documents within the AR as filed that it redacted, as well as all documents responsive to other materials under the Court's order to complete the AR that are being withheld on privilege grounds.

## IV.     Conclusion

For the above reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** ATSC's Motion to Complete and/or Supplement the Administrative Record as follows:

1. As to the Egyptian RFP and ATSC's proposal materials for the NMSS in response, ATSC's motion is DENIED;

2. As to the post-LOR communications between Egypt and the Government related to the NMSS and the procurement, ATSC's motion is GRANTED-IN-PART and DENIED-IN-PART, and the Government shall complete the AR with communications between the Navy and Egypt about whether to compete this procurement as sole source or through full-and-open competition, and with communications about Egypt's NMSS requirements;

3. As to the materials ATSC provided to the Navy about the NMSS after Egypt issued its LOR, ATSC's motion is GRANTED, and the Government shall complete the AR with all these documents; and

4. As to the unredacted versions of the documents that the Government has identified as deliberative, ATSC's motion is DENIED-IN-PART; the Government shall provide a privilege log for all materials redacted or excluded from the AR on the basis of privilege, and unredacted versions of those emails whose inclusion has been stipulated; and

The Government shall file a corrected Administrative Record consistent with this opinion.

**IT IS SO ORDERED.**

s/ Edward H. Meyers
Edward H. Meyers
Judge
